and Protective Association, et al. v. Black, et al. Mr. Sear, you may proceed when ready. Good morning, Your Honors. Daniel Sear, along with my colleague Brian Kelsey, on behalf of the National Horsemen's Benevolent and Protective Association and its 12 state affiliates. Your Honors, never before has Congress delegated this much power to a nongovernmental entity. And in doing so, Congress has transgressed a fundamental constitutional line that goes to the nature of our democracy, transparency, and accountability. The District Court here found the novelty of this scheme, and the parties in fact agreed below that Congress has never done this. Because Congress has violated these fundamental constitutional lines, this Court should reverse the District Court and enjoin the Act. So let me start with one predicate matter, just to get out of the way from the District Court's opinion, and that's its mention of an intelligible principle. Obviously, if we do normal public non-delegation, we're used to the intelligible principle concept. You read Jarkizi or Big Time Vapes, it talks about the intelligible principle. It's important to remember in the private non-delegation context, the intelligible principle has never been part of the test. That that's not something the Supreme Court or various circuit courts have looked to. Yeah, I saw the discussion of intelligible principle in the District Court's order, and I confess I was puzzled by it because I did not understand what role it was playing in the argument. Maybe someone, maybe you or somebody else can tell me, but I thought, although look, this is a significant issue that we're talking about here today. And yet, it struck me that the legal question is quite straightforward. It's not easy, but it's straightforward, which is, is the authority here, the private entity, is it subordinate to the FTC? Correct, Your Honor. So I think Atkins is the right place to go for that proposition. So for starters, Amtrak 1, the D.C. Circuit, makes very clear intelligible principle concept doesn't apply in the private context. What does apply is the Supreme Court's decision in Atkins. And there the Supreme Court says the question on a private non-delegation is who determines what the law is, who determines what the law is. And in this case, it's pretty clear to us that it's the authority that's doing the determining. Let me just get out there sort of what I think is a hurdle that you need to overcome, which is the FTC does have the power to approve or disapprove a rule from the authority. So why isn't that enough to make the agency not subordinate, or better yet, why doesn't that make the authority subordinate to the agency? Two important points, Your Honor. First of all, it's the power to approve or disapprove, but not the power to modify. And the power to modify really is the power to make the law. We're dealing with big rule packages, dealing with big topics. And so if there's one part that the FTC finds is wrong, they can't pull it out. There's one part that they think they should put in. There's no ability to put in. There's no ability to modify. Well, they can recommend modifications. They can recommend modifications. The law says recommend modifications. But they have to take what the authority gives them. But is there not some leverage with a recommendation that we're not going to approve this unless these changes are made? Is that not something that we should consider to be sufficient control or leverage from the FTC? I think it's important to remember that the authority is always the one driving the bus. It's the authority that's drafting the rule, putting it in front of the FTC. The FTC does have the power to decline. But it's important to remember the statute's language. It says the FTC shall approve unless it finds it inconsistent with the statute. So let's look at this consistency review for a minute. It's a ministerial review, to use the phrase that this court uses in limited generation. It is a basic check of are you within these broad categories of medication control or racetrack safety. And as long as it's in the broad category, you guys do the policy. In fact, in the racetrack safety rule order, the FTC notes places where the public comments raised significant policy concerns, but throws up its hands and says that's not our job here. We don't get to pass on the policy concerns. Again, even if the FTC could pass on the policy concerns, it wouldn't be able to take those portions of the rule out because it doesn't have the power to modify. This is one of the ways in which this case is, I think, importantly different from the FINRA SEC cases. Right. The SEC does- I was going to say the second hurdle you need to overcome is this law was modeled on the Maloney Act and FINRA SEC, and so are you effectively asking us to say that FINRA is an unconstitutional private delegation? I'm not, Your Honor. I'll note that the Fifth Circuit has not answered that question before, and I think if you read this court's decisions in Jarchese and Judge Oldham's concurring opinion in Cochran, that is an interesting and open question. Well, yes, but we don't need to take that question. But we don't have to take that up today. I don't think you're- I mean- So how do we distinguish the SEC? I want to be sure that you're not asking us to declare FINRA a nonconstitutional private delegation. Indeed I am not, Your Honor. I am only asking you to declare FISA a private delegation. There's only so much we can bite off right here. Right. So why is FINRA different? I think two things. One is the power to modify, and it's not just the power to modify. It's the power to modify based on policy. You read the SEC's statute, it has a broader discretion for what grounds it can modify on. It's not just this consistency review. The other thing I would just note is it's not only the SEC cases. I think the agricultural marketing cases are also interesting. If you look at the Ninth Circuit's decision in the Riverbend case, or you look at the Second Circuit's decision in the Cattleman's case, the Beefman case, in both instances you're dealing with a nonregulatory setting, right? It's just agricultural marketing. And yet the Secretary of Agriculture has significantly more control over the agricultural marketing organizations than the FTC has over FISA. He's got policy control. He has budget control. He has the power to approve contracts. He appoints or approves the appointees to the various ag marketing boards. And so it's significantly more control. You also look at your sister circuits and what they've said about the Moloniak and the Finner cases. The power to modify really matters. You read the Seventh Circuit's Aslan opinion, and they mention the power to modify as an important aspect of the government's control. You look at the D.C. Circuit's Lowe opinion, they mention the modify. You look at the Second Circuit's Chartered Standard Investments opinion. Well, I mean, you're referring to the power to modify. I mean, the statute as discussed in Aslan says, well, the court is talking about the statute. The SEC may abrogate, add to, delete from all FINRA rules as it deems necessary. Necessary and appropriate, if you read the fullness of the act. And what is that? That is the power to determine the law. The SEC has the power to look at what is given by FINRA, decide what's good and what's bad. So in your view, if FINRA sends something to the SEC and the SEC says on a policy basis, we're not doing this. So go back and redo it because we don't like the policy that you're coming up with. In your view, the SEC can do that under the statute, and HISA cannot. In HISA, the FTC does not have that power. And we see that in the racetrack safety rule. I think, too, the letters that the FTC has had back and forth with various members of Congress that are incorporated into the record, where whenever a member of Congress has asked, like, how does the FTC think about these approaches? What expertise does the FTC exercise as it's looking at these rules? The FTC has consistently pushed those questions off on the authority and said that's not what you've asked us to do here, Congress. Our job is just to do a basic consistency check. And from our perspective, a consistency check is exactly the rubber stamping that this Court turned down in both Sierra Club cases. I'm sure you have time for rebuttal, and now we'll hear from Ms. Pettit. Thank you, Judge Duncan, and may it please the Court. I'm going to spend some time talking about the SEC-Fender relationship as well because I think it helps to illustrate why the district court was wrong, that precedent compels it to uphold this constitutionality of a statute that even the FTC agreed in the trial court, and I'm looking at ROA 1791, was an extension of the SEC-Fender relationship. This Court, nor the Supreme Court, has ever actually addressed a case like this, where the statute allowed a private entity to both decide its own jurisdiction and in the Supreme Court's language in Atkins, determine the scope of federal law within that jurisdiction. Because such a scheme is inconsistent with the constitution, the constitution compels this Court to find it invalid. So looking to the SEC's statutory language, I do want to clarify something that my colleague said just a moment ago about the scope of the review power of the SEC. The SEC has the ability, is required, as in HISA, to approve a rule that is consistent with the statute. However, there are two differences, and I'm looking at 15 U.S.C. 78F, B as in boy, 5, and 15 U.S.C. 78S, C as in Charlie. The first establishes the standard by which FINRA is using, which is fundamentally different than HISA, because it incorporates a notion of discretion into what the SEC is agreeing the FINRA rules is consistent with. So it uses discretionary terms like protect investor and the public interest and requires the consistency review to examine whether the rule is, and I'm quoting, not related to the purposes of this chapter. So when the SEC is determining that, and there's no similar language in HISA, when the SEC is determining that FINRA rules is consistent with 78F, B, 5, it is incorporating a policy determination into that and whether it is consistent with the purposes of the statute. Then it has the power to modify after the adoption as well as an interim rule power where the agency can modify the rule as it is deemed necessary or appropriate to ensure the fair administration of the organization or otherwise in furtherance of the purposes of this chapter. That, again, gives a policy valence to their consistency review, which does not exist in HISA, which in that the lack of that policy valence is what puts us back into the luminant nature where it's just is it consistent with the specific language of the statute. And that is borne out in what the FTC has in fact done since the statute was passed. They have rejected any public comments, for example, that relate to policy concerns because on the grounds that they are not within the scope of the consistency review that the FTC is required to do. And that goes to why this Court's precedent doesn't control this particular case. I'm specifically looking at page 532 of the Reddick decision where the Court said that HHS could independently perform its reviewing, analytical, and judgmental functions and can superintend the private entity in every respect. Here, the FTC doesn't have that ability. It doesn't oversee the internal workings of the authority. It can't independently assess its rules. It looks at its rules, and if it determines that it's consistent with the statute, in the language of luminant, it has no choice but to approve it within a statutory period of time. Here's 60 days, which does not give sufficient time to really determine even if they could have the policy judgment, which they can't, that it was the exercise of a real independent regulatory function. Lacking that sort of subservience takes this case outside of Adkins. It takes this case outside of Reddick. And it takes this case outside the Constitution because as this Court recognized in Jarchese, admittedly in the public non-delegation context, the power to legislate is the power to set coercive rules for individuals outside of the legislature. That is what the authority is doing. It has been given, for example, in the racetrack safety context, 12 topics that it's supposed to regulate about. But there's no limitation within those 12 topics other than to say safety, to limit what they can do. So, for example, there is a history in the American racing to use dirt tracks. They can switch, they can require the switch to synthetic tracks. That's a major binding, that is a major change of policy that they can do subject only to the consistency check. And, again, there's nothing the FTC could apply that that's inconsistent with. But that has a significant effect on private parties, and that is a fundamentally legislative function, which a private party cannot do. Just so I'm clear on your argument, your argument is under the terms of the statute. It says the FTC, the commission shall approve a proposed rule or modification if the commission finds that the proposed rule or modification is consistent with this act. It says shall propose. So if the commission finds that a rule is consistent with the act, it has an obligation to approve the rule. But if the commission, I guess, and this is the real question, and I'll have to hear what the other side says, if the commission finds that a rule is consistent with the act but it doesn't like the policy, it would prefer a different policy, dirts, dirt tracks, tow grabs, medication, assessment methodologies, in your view, is the commission powerless at that point to disapprove the rule? It has to approve it. Yes, Your Honor. Okay. The commission acknowledged that in its various letters about proposed rules, and that's consistent with this Court's statement in Luminant, where the EPA had tried to look at the consistency of one of, I believe it was Texas's, state improvement plan under the Clean Air Act for compliance with state law, and this Court said that was inappropriate because it wasn't one of the factors under the statute. So the agency was required at that point to approve the plan. So that they can do what they have done here, which is they can suggest modifications, but the authority is not obligated under, I believe it is 305C3, to actually take those modification suggestions. That particular provision is written in an expressly discretionary language. It may resubmit. It can make recommendations. The subsection says in the case of disapproval of a proposed rule or modification under this subsection. So, I mean, I read that consistently. That's under C2, where it includes the language shall approve. So the flip side of that is if there's a disapproval, I assume that means based on inconsistency with the act. But I'll see what the other side says about that. Yes, Your Honor. Okay. If there are no further questions, we ask you reverse. Okay. Thank you. No, you don't have any rebuttal. All right. For the Federal Trade Commission, Mr. Busa. Good morning. Good morning, and may it please the Court. Joe Busa on behalf of the Federal Trade Commission. The private authority here functions subordinately to the FTC because the FTC reviews every proposed rule, method, and procedure independently and critically. Okay. I don't understand. I'll read that in your brief, independently and critically. What does that mean in terms of the statute? Because I agree with you that the central issue here is the FTC, is the authority subordinate to the FTC. I agree that's the issue. But what does it mean to review something independently and critically? The D.C. Circuit eliminated that standard in the Susquehanna case with regards to the SEC statute, which, by the way, is materially identical to this statute insofar as it requires the SEC to approve or disapprove a proposed rule based on whether that rule is consistent with that act and applicable rules. That's 15 U.S.C. 78S.B.2.C., called Standards for Approval and Disapproval. That's materially identical to our standard here. So Congress would have been aware of that standard. Can the SEC modify a FINRA rule if it disagrees with the policy? Yes, Your Honor, if the statute there has broad-based considerations, that the SEC then gets to have an independent view of what those require. So, for example, here, if the FTC reviews proposed rule and looks at not just the detailed requirements Congress itself set out in the statute, establishing the framework for the policy, and a lot of detail there, but also these broader considerations, principles, and elements, the FTC has an independent view of what those considerations, principles, and elements require in any given case. They're not beholden to what the authority thought about those considerations. So if, in the FTC's independent view of what it means to treat horses humanely, they think that a particular rule is just not consistent with the humane treatment of horses, the FTC can disapprove a rule on that basis. It can also require a revision and a resubmission. That's functionally a modification power. So if the FTC reviews a proposed rule and sees, look, in our independent judgment, we think that proposal is inconsistent with what we think the Act requires. Can it require a resubmission? You just used the word submit again or resubmission. Can it require that a rule be revised and resubmitted for approval? Yes, Your Honor. But more importantly, the statute requires it. The statute tells the authority, you shall propose all of the rules that are required by this Act, and consistent with a rule promulgated by the FTC. The FTC has also then gone on to promulgate a rule, telling them again, you shall propose every proposed rule, modification to a rule, procedure or method for implementing the statute. You've got to propose all of it. So on top of that, yes, of course, the agency can tell them you have to comply with those legal requirements. So let's say I'm thinking of helpful to me to have specific examples. So there are rules about whether horseshoes should have a toe grab. And the FTC evidently reviewed that and found it consistent with, quote, the humane treatment of covered horses, which is a statutory term. But then in its order, it says, well, look, commenters, you know, were arguing about different aspects of the toe grab, and the FTC says, but these are essentially policy disagreements. Now, does that mean that the FTC views itself as being powerless to address policy disagreements over a toe grab rule? As to that specific decision, I wouldn't necessarily call that a policy disagreement. But, yes, the FTC there did say that there were two available options, both of which would be consistent with the statute. Okay, so the FTC found that the rule that the authority proposed was consistent with the humane treatment of covered horses, but at the same time said that it wasn't going to get into policy disagreements about the rule. So doesn't that mean that the authority is the one that is setting the policy for the rule? I would say no for a couple of reasons, Your Honor. First, of course, as to a vast majority of issues under the statute, Congress has set the policy. And no one disputes that we can review for compliance with all the detailed requirements Congress already set out. So this is not a statute in which we're... Congress said the policy was the humane treatment of horses. Your Honor, Congress set a detailed baseline requirements for the anti-doping and medication control program. Well, let's stay with toe grabs for a second. So there's a rule on toe grabs. I mean, that has the force of law, right, for covered horses, and it's a law. It's a law on horseshoes. Congress said the authority must propose these... and they're consistent with the Act, right, so consistent with humane treatment of covered horses. But the FTC doesn't get to say we prefer a different policy with respect to toe grabs. If the SEC determines that the humane treatment of horses required the banning of toe grabs, it could disapprove the rule on that basis. If it determined that the humane treatment of horses allowed toe grabs, it could approve the rule on that basis. And moreover, turning to our independent rulemaking authority, if banning toe grabs were required, were necessary to protect the safety and welfare of horses or the integrity of horse racing, then the FTC could issue a rule banning those toe grabs. That rule would further provide limitations on what rules could be proposed by the authority and approved by the Commission. The FTC could unilaterally oppose that, but only if it meets the good cause requirement for doing it without notice and comment. So, one, I have two responses, Your Honor. I think that's correct, but what Congress is saying here is that the level of importance and urgency of an issue required to meet good cause under 553BB is, in Congress's judgment, satisfied here if the FTC determines that a particular rule is necessary to protect the safety and welfare of horses or the integrity of horse racing and wagering on horse racing. We think that's the best interpretation of that provision. But... And that follows from the fact that Congress used the word if, so an interim final rule is authorized if the FTC determines that it is necessary to do so. A positive phrase set off in the middle of that sentence just defines what an IFR is. It says, by the way, the interim final rule we're talking about, we're referring back to 55BB. But the main condition Congress identifies is with that IF clause. It could have said, if you satisfy the requirements of 553BB and if you further determine that the rule is necessary to protect the welfare and safety of horses. But even if you disagree with me about all of that, I don't think the other side seriously disputes the proposition that notice and comment would not be necessary within the meaning of 553BB if there's already been notice and comment on the same issue with regards to a rule proposed by the authority. So the authority proposes a rule, and it's required by our procedural rule to identify all of the relevant alternatives and reasons why one option is better than another. There's then notice and comment on that rule and the authority's reasoning on those points. There is no reason to have a second round of notice and comment if the commission then determines, actually, we want to do X instead of Y, and so we think that that is necessary to protect the safety of horses, as long as X and Y were identified as alternatives in that proposal. In your view, does the FTC need to have this good cause sort of backstop for rulemaking in order for this law to be constitutional under the private non-delegation doctrine? No, Your Honor. And so we think we've got two independent arguments here. One is that the rulemaking takes care of any problem there might be. But the other one is that, look, the SEC standard is materially identical. It approves or disapproves based on whether a proposed rule is consistent with the statute and applicable rules. That's the standard. And every court of appeals to have faced a private non-delegation challenge to that statute has upheld it because, in the words of those cases, the power to approve or disapprove is according to reasonably fixed statutory standards. You're talking about Fenner cases. Yes, Your Honor. And they accept the constitutionality of those Fenner cases. And the courts rest that holding on approval or disapproval. Under Fenner, 78SC of 15 U.S.C., it says the SEC may abrogate, add to, and delete from all Fenner rules as it deems necessary and appropriate. Is there an analogous provision under HISA? Because I don't see it. It's the interim final rule provision that we were just discussing. It is different in some regards, I will admit. But I just want to point out two key features. Okay. One, none of the cases addressing a private non-delegation challenge to the SEC statute even mention that independent rulemaking authority of the SEC. They uphold it on the basis of approve or disapprove. That's a different section of the statute. And two, two out of three of those cases... It doesn't matter on what basis they can approve or disapprove. I mean, if the agency's approval or disapproval is a ministerial action... Doesn't that meaningfully differentiate HISA from the Maloney Act? It is not a ministerial action. The D.C. Circuit's Susquehanna case, talking about independent and critical review, that's talking about the SEC's approve or disapprove if consistent with the Act language. And I want to clear up one misunderstanding here, Your Honor, if I may. I know I'm about to run out of time. The SEC has to approve or disapprove a proposal based on whether it's consistent with the statute. It has no third option of saying, well, actually, I want to modify the proposal. What the other side calls the modification power, that's the independent rulemaking authority under 78S paragraph C that they're referring to. So the standard that's applicable to approve or disapprove is materially identical. Okay, and so you're saying the analog, the analog to that section under HISA is the good cause rulemaking. Yes. So there's two. Each statute has independent rulemaking authority for the agency. SEC's is somewhat broader insofar as there's no reference to the good cause standard. They don't have to have, they don't have to show good cause. That's correct, Your Honor. Under rulemaking under SEC. That's my understanding. Just say yes. That's correct. Okay. Counsel, let me just boil this down. I just have two, I know your time is up, but is there any circumstance where the FTC can initiate a rule with or without the approval of HISA, governing horse racing, within the same... Yes, Your Honor, that independent rulemaking authority we have under 3053E, the interim final rule standard, we can initiate that process regardless of what the authority wants to do. Okay, and in the event of a policy difference, getting back to our tow-grab example, and I'm sure there are many others, in the event of a policy difference, which entity would have the final say over and above the other? It is the FTC, Your Honor, for two reasons. First, if the FTC determines that one of these broad considerations, the humane treatment of horses, requires a certain outcome, that will prevail. It will disapprove a rule that does not... They can reject, right, or disapprove. That does not meet with this understanding of that broad principle. Two, it can use its independent rulemaking authority... Policy difference as opposed to some other standard. We say it's a policy difference, and it's defined and understood as such. The FTC would still have the authority, based on your argument, have the authority to impose such a rule. Yes, Your Honor, I just want to highlight that here we're dealing with a facial challenge, and they have to show there is no constitutional application of this Act. We've shown there's plenty of constitutional applications where the statute is detailed, and we can have our own view of what these considerations require. Secondly, there's the avoidance canon. If for any reason... And then the last thing, I really... This is very important, and I appreciate the Court's indulgence. The rules upholding the SEC statute, two of the three of them, are addressing the SEC statute as it existed before 1975. As plaintiffs point out, this is very helpful to us, before 1975, there was no general independent rulemaking authority that the SEC held. That came in 1975. So at least those two statutes upheld, under the Adkins standard, a statute that's materially identical to ours, in which the agency approves or disapproves based on consistency with the Act. Thank you, counsel. Thank you, Your Honor. Mr. Shah? Thank you, Your Honor. May it please the Court, Prateek Shah for the authority defendants. As the fourth advocate up in this case today, I thought it might be helpful for me just to start with a couple of key points that I think remain undisputed even after all the briefing and argument so far. First, the FTC alone wields ultimate power to enact binding rules with the force of law. Specifically, the FTC determines whether to approve or disapprove contingent on modifications the authorities' proposed standards, which otherwise lack any legal effect at all. Second, the FTC reviews proposed standards for consistency with the Act and related rules subject to the APA. That is the type of review that the Supreme Court and every court of appeals to have considered the issue to date have relied on to reject private non-delegation challenges for the last 80 years. I understand that in the Finner cases. That may be true, but what Supreme Court case are you thinking of? Your Honor, in fact, Adkins. And I think this is an important point in Adkins. The statute in Adkins itself, the plaintiffs make it sound like the agency in Adkins could have changed the minimum price just because they didn't like it as a policy matter. That is inaccurate. If you look back at the statute in Adkins, which is cited in the Supreme Court case but not quoted in full, it's Section 4, Part 2A of the COLE Act. What it says is that the COLE Commission can approve, disapprove, or modify to, quote, to conform to the requirements of this section. That means before it takes its red pen and changes the price, it had to have found that the proposed price was inconsistent with the requirements of the section. And what that section does... Yeah, it lays out a bunch of things that the private board has to take into account and the agency has to take into account in setting the minimum price, like the cost, the marginal benefit, the, you know, various sort of factors that it had to take into account. So before, it's not just an exercise of policy discretion, as plaintiffs say. The COLE agency couldn't just say, we prefer a higher price or a lower price. They had to find that it was necessary to, quote, conform to the requirements of this section. That sounds a whole lot like consistency review. That is, if they did not find that the proposed price was inconsistent with the statute, they could not have changed it. Okay, well, so I'm reading Adkins right here. Yes. It says, it, referring to the agency, not the code authorities determines the prices. It determines. Right, it determines the prices. The agency determines the prices. So let's see if, by analogy to HISA, let's talk about... We were talking about tow grabs earlier. Let's talk about a methodology for assessing the fees, the assessment methodology rules. Mm-hmm. Now, in approving these rules in April 2022, the FTC said, look, the rules are consistent with the Act, and, quote, it is worth noting that there are likely multiple methodologies that the authority could have proposed that would be consistent with the Act. Accordingly, the commission encourages states that would prefer another methodology to continue engaging with the authority. Now, so given that, that's the response of the FTC, why isn't it accurate to say that it's the authority that's determining this particular rule, not the agency? Well, Your Honor, that's true in these other schemes. In the SEC FINRA scheme, for example, the SEC cannot tell FINRA to... based on a policy disagreement. What is your authority for that proposition? The statute. Here is what the statute says. The commission shall approve a proposed rule change of a self-regulatory organization, FINRA, if it finds that such proposed rule change is consistent with the requirements of this chapter and the rules, period. That is cut and pasted into this Act. They cut and paste that section. There is no discretion. Counsel for plaintiffs misstated when you responded to your question, hey, your question was, can the SEC disapprove the rule if they disagree with the FINRA policy? They cannot. They can only disapprove the rule if it is, quote, inconsistent with the requirements of the chapter and the rules. In your view, there's no other section of the relevant statute in the SEC FINRA context that gives the SEC additional discretionary authority to modify or abrogate or delete rules? Only after it has accepted that rule. It can then go back and start an entire new rulemaking, right? This is no longer contingent on what FINRA is doing. Does HISA have an analogous provision? It's the same one that you've been talking about with the interim final rule provision. Now, Your Honor, the one thing I will mention about that is I think there are reasonable disagreements on whether the good cause requirement is, as the FTC says, satisfied by Congress's determination that they have to find it's necessary. And I understand the other side's argument that those are two independent requirements, right? First, good cause and necessary. The government says, well, Congress necessarily meant that the necessary finding satisfies good cause. I find those both to be reasonable. We're here on a facial challenge. The canon of constitutional avoidance requires us not to interpret the FTC's authority at the bare minimum and the authorities at the bare maximum. It actually requires the exact opposite in a private non-delegation challenge. You should construe the FTC's authority in a way that renders this scheme constitutional, not to go out of our way to render it unconstitutional. And, Your Honor, my submission is you don't need that interim final rule making power at all to make this statute constitutional. The agency in Adkins didn't have an interim final rule making power. You don't need that power. And remember, the Supreme Court in Adkins said this is unquestionably valid. This isn't one of those cases where the Supreme Court said, this is at the outer margins of the private non-delegation doctrine. It's clear that plaintiffs want to rewrite the private non-delegation doctrine. But that is a request for the Supreme Court, not this court. They don't have a case that's even in the ballpark of striking down a regime like this. Let's look at the cases that have opined on this. There's Adkins. Amtrak 1 from the DCC. Sure. So Amtrak 1, which, of course, was vacated on other grounds. But here is why, on its reasoning, Amtrak 1 is a helpful case for us. Here is exactly why. Amtrak 1, the linchpin of why the DC Circuit found that to be a private non-delegation problem was that even if the government disagreed, the agency in that case disagreed with the proposed rule, it could still become law. Even if found it was inconsistent with the act, whatever, it could still become law because that statute had a provision where if the two sides disagreed, the private body and the agency disagreed, it went to private arbitration. And the private arbitrator could decide that in favor of the private authority, and it became law. That is what, on remand, the DC Circuit said, look, this is now, of course, by that point, the Supreme Court had found it to be a public entity. But what the DC Circuit said is, well, there's still a due process component here because even though it's a public entity, it is kind of a competitor regulating its competitors. And so what it said, and we quote this all in our brief. This is like Amtrak 4, I think. But what the DC Circuit said is, the lynchpin of the private non-delegation problem there was because a private arbitrator without any involvement of the government at all could make this binding law. That could not be further from the case here where everyone here agrees that nothing the authority does becomes law until the FTC promulgates the rule after notice and comment. Again, the Supreme Court in Adkins says unquestionably valid. We have 80 years of FINRA cases from four different circuits affirming it. Not a single case that's even close. What they try to do is poke holes. They say, oh, there's this distinction from Adkins, this distinction from SEC FINRA. The question is, are those distinctions of constitutional magnitude? So as we now go from unquestionably valid to striking down a federal statute, I would submit we're not even close. The principal distinction that they started off with is that, oh, look, the modification power, the modification power. The modification power, whether you can take a red pen and change $10 to $8 in the price, as admittedly the coal agency could do, if it found it inconsistent with the statute, it could do that. The difference between that and telling the private coal board, hey, we're going to reject this, and you need to resubmit this at $8 a pound or whatever it was, there is no functional difference. And that's exactly what the FTC can do here. If the authority proposes tow-grab rule one, can the FTC say, you know, that's consistent with humane treatment of horses, but we would prefer tow-grab three, some variation on it. So you go back and revise it and come up with tow-grab three, and we'll approve that. Can they do that? I don't think they can do that, but nor could the coal agency in Atkins have said, you know what, you proposed $10, and we prefer $8. Even though $10 is consistent with the statute, we prefer $8, so we're going to change it. They could not have done that. Section two, part, section four, part 2A says, as I mentioned before, they can only modify so as to conform it to the requirements of the statute. Atkins, unquestionably valid. The Supreme Court, nor any of the FINRA cases for the last 80 years that have held on, has discussed any of this, this kind of marginal policy discretion versus statutory guidance. That's not in any of the opinions yet. They've been affirming, affirming, affirming, rejecting private non-delegation challenge after another. Plaintiffs want to rewrite the private non-delegation doctrine. They cite over and over dissenting opinions, concurring opinions. That's all well and good, but that's a request for the Supreme Court, not this Court. Thank you, counsel. Thank you, Your Honor. Let's see. Mr. Soar, you have, would you give Mr. Soar an extra couple of minutes, because I'd like the other lawyers to run over. I've got five points in five minutes, but I'll take five points in six or seven minutes in that case. Seven. Thank you, Your Honor. So when I listen to the FTC talk about IFR, I think they think it means independent final rule. Right? This is over and over. Their version of IFR is independent final rule as part of their independent and critical judgment. It's not. It's interim final rule. The FTC is trying to lean an incredible amount of justification on a really thin read, and it would end up kind of destroying the whole point of an interim final rule, which is that it's a stopgap measure. What we're here on is, they're right, a facial challenge. We're talking about big, permanent rules that are going to transform an industry nationally. The second thing I want to say is on the power to modify. So you're quite right, Judge, that that is the separate section that's important here. It's not just important to us. Again, I would point you to Lowe, Aslan, and Standard Investments, where other circuits, when they looked at why the SEC is over and above FINRA, like that was a really important provision. In fact, in Standard Investment, the court says, this is a really important reason that we see this as being OK. And that's just not present here. The third thing I want to talk about is the tow-grab one versus three. It's a great example. So thank you for giving it to us, Your Honor. Two points. One, it assumes expertise on the part of the FTC to figure out what it wants the policy to be or should be. But there's no reason that we should think that the FTC has expertise in this matter. In fact, they don't, right? The SEC obviously knows what it's doing when it's regulating the financial markets. That's what it's done for almost a century. That's very different from this case, where the FTC has no background. I don't think there's a veterinarian on staff anywhere at the FTC who can tell you the effect of tow cleats on racing horses, on turf versus synthetic versus dirt tracks. That's just not what they do. And the second thing is that, well, the other way they could figure out one versus three is they could look at the public comments. But they've already said, we don't read the public comments for policy. That's not what we read them for. We read them for consistency, because that's our job. Fourth, I would say, you know, especially the government relied a lot on this facial nature of our challenge. And, of course, the government wants every challenge to be judged on a facial basis, or, you know, rejected on a facial basis rather than as applied. But ultimately this case, I think, ends where Judge Duncan started it. It's who determines the law here? Who is subordinate and who is in the driver's seat? And quite clearly I think what we've established is that it's the authority that does the proposing. It's the authority that does the policy formulating. We really haven't even talked about all of the other ways in which the authority is powerful here. But it's ultimately the authority driving the bus. So moving from the FTC to the HISA argument... I don't think you would deny that an agency like the FTC could use some expert help if it were formulating rules for the thoroughbred racing industry. I mean... Certainly not. Sure. So I don't think you can push your expertise point too far. In my view, what the argument is is how that expertise is transmitted to the FTC and whether the FTC has to accept it or not. That's what I thought the point is. I mean, I don't... No one doubts the authority of Congress to impose... Well, I guess no one's challenging the authority of Congress to impose rules on the thoroughbred horse racing industry. Okay. I guess somebody can bring a Commerce Clause challenge to that, but no one's doing that right now, as far as I know. The question is, who's formulating the expertise and who has to accept it? I think it's... So look at other statutory schemes that you... that come before this Court every day, right? And we talk about input and advice, right? The various other private non-delegation cases say the private entity can have input or an advisory role. I have a First Amendment right to petition government, right? I can send a letter saying, I think you should adopt Rule X. There are certainly plenty of statutes that say, before you adopt a rule agency, you should consult X, Y, and Z stakeholders. You should consult either broad categories of stakeholders or maybe even they'll say in the statute, you can consult this particular trade association as part of developing a rule. This is not that at all, right? This is not input and advice. This is, we're going to draft a rule as the outside agency, as the outside entity, we're going to bring it to you, and then as long as it falls in one of these big buckets, racetrack safety or medication control, you have to approve it. I mean, evidently under Curran, that old Supreme Court case, Congress could allow a veto power in the industry, right? Correct, Your Honor. And so, I mean, that's law that we have to follow. But how does that factor in here? It's about which direction the law is being made, right? In that instance, you have the agency doing the policy development, doing the drafting, and then going to the outside groups and saying, is this a good law? Here, we have the outside group writing it, doing the policy development, doing the drafting, saying, this is a good law, and then you have the FTC performing this merely ministerial check on the back end to say, does this fall in one of these two broad categories? So the final thing I want to say in my last 90 seconds here is just to quickly address Adkins, and I think there you really have to go and just read Amtrak 1, because Amtrak 1 specifically says Adkins, the coal commission, had the power to rewrite the prices. And in fact, you go to the statute that was being quoted, it sets a floor. It says that the commission has to approve it if not inconsistent with the statute and the fair competition principles embodied in the statute. So it gives the coal commission much greater authority, and it sets a floor, whereas what we have in Heise is a ceiling. It's agency, if you think it's consistent, you've got to push it through. I know we haven't talked about Rettig at all, but I just think maybe very quickly on Rettig, it's important to remember that Rettig is a small part of the code, whereas this is an entire rule that's nationalizing regulation of an entire industry. It's important to remember with Rettig that what happened in Rettig happens every day. Rettig says there are over 1,200 times where standards are incorporated into the code, whereas in this case it's never happened before. This is entirely novel, what's happening here. And third, in Rettig, the agency chose to put the independent standards into the rule, and the agency always has the ultimate authority to pull the independent standards out of the rule, and that's not simply the case here. This has never happened before. Thank you, counsel, on both sides for a very well-argued case. Thank you, Your Honor. It's under submission.